# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL S. TALLEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-06-269-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Michael S. Talley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whether the

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

**Claimant's Background**

The claimant was born on May 6, 1967, and was 38 years old at the administrative hearing. He has a high school education plus training as an emergency medical technician ("EMT") and previously worked as an EMT and ranch hand. The claimant alleges he has been disabled since February 15, 2003, because of kidney stones; arthritis; injuries to his leg, pelvis, and left hand; depression; and problems walking and using his hands.

**Procedural History**

On March 8, 2004, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Both applications were denied. After a hearing on September 15, 2005, ALJ Lantz McClain found that the claimant was not disabled in a decision dated March 8, 2006.[2] The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

---

[2] The claimant filed prior applications for disability insurance benefits in March 1987 and May 2003. Both were denied at the agency level and no request for reconsideration was sought by the claimant. The ALJ indicated that to the extent any evidence was discussed from the claimant's prior applications, it was for the limited purpose of determining the effect of the claimant's chronic health problems on his current level of functioning. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g)), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift and/or carry ten pounds occasionally and up to ten pounds frequently, stand and/or walk at least two hours in an eight-hour workday with normal breaks, and sit at least six hours in an eight-hour workday with normal breaks. The ALJ further limited the claimant to performing simple and repetitive tasks (Tr. 20). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies he could perform, *e.g.*, order clerk and machine operator (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence; (ii) by finding he had the RFC to perform substantial gainful activity; and, (iii) by improperly analyzing his credibility. In his first contention, the claimant argues that the ALJ improperly evaluated the opinions of his treating physician Dr. R.J. Helton, D.O. The Court finds this argument persuasive.

The record reveals that the claimant was examined by Dr. Helton in June 2004. The claimant had suffered an automobile accident in 1986, and it was from this that many of his complaints derived. In the accident, the claimant suffered fractures of the bilateral hips, the pelvis in three places, and left femur. His right leg, which was nearly amputated, was attached below the knee, and all the tendons of his left hand had to be reattached. According

to the claimant, he still had pain, trouble walking because of drop foot on the left side, numbness in the right leg from the femur to the knee and into the toes, trouble holding onto objects with his left hand, low back pain with movement, and depression and anxiety related to his pain. Dr. Helton noted the claimant's past surgical history included two plates of the left femur, surgery with rods and pins in his hips bilaterally and in his left knee, pin reattachment of the right leg, and surgery for hernia repair. Examination revealed no edema and adequate pulses in the lower extremities. Although the claimant appeared to ambulate with a limp and seemed to stumble, he did not rely on an assistive device. The claimant's left hand had a hard knot which was hypersensitive to touch, and he experienced shooting pain up his left arm. He had decreased sensory in the right leg beginning above the knee and down into his foot. The claimant had an adequate range of motion in the shoulders, elbows, and wrists, although the left wrist was decreased from the right wrist. He had decreased range of motion in the hips, knees, ankles, and lower extremities, and he had weak heel and toe walking. Although the claimant could oppose thumb to finger tips and manipulate small objects, Dr. Helton indicated he could not hyperextend the fingers of his left hand and had weak grip strength in both hands. He assessed the claimant with arthritis/arthralgia, drop foot, unstable gait, degenerative joint disease in multiple joints, and depression (Tr. 167-73).

In August 2005, Dr. Helton completed a medical source statement regarding the claimant's physical abilities. He determined that the claimant could lift and/or carry less than ten pounds, stand and/or walk for a total of two hours in an eight-hour workday and ten minutes continuously, sit for a total of two hours in an eight-hour workday and 30 minutes

continuously, and push and/or pull was limited. The claimant had to lie down during the workday to manage his pain. He could occasionally balance, reach, handle, finger, and feel, but he could never climb, stoop, kneel, crouch, or crawl. He had environmental restrictions including a phobia of heights and was sensitive to temperature extremes, dust fumes, and humidity. Dr. Helton indicated the claimant's limitations were supported by his bilateral hip/pelvis pain, pain in his left hand, and surgeries related to his automobile accident in 1986 (Tr. 218-19).

A treating physician's opinions are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted].[3] The ALJ specifically discussed the medical source statement completed by Dr. Helton and the functional limitations imposed therein, determining that Dr. Helton's opinions were deficient because: (i) he failed to "describe a medically determinable impairment that could reasonably cause such limitations"; (ii) his conclusions were not supported by clinical findings; (iii) there were no treatment records to support his assessment;

---

[3] The Commissioner argues that Dr. Helton should not be regarded as the claimant's treating physician just because the claimant has designated him as one. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source."). Although the only evidence in the record that Dr. Helton was the claimant's treating physician is the claimant's testimony (Tr. 254-55) and information he provided during the application process (Tr. 84), it appears from the ALJ's decision that he regarded Dr. Helton as the claimant's treating physician (Tr. 20). The Court will not therefore second guess the ALJ's determination.

and, (iv) his assessment was "clearly based on the claimant's subjective complaints." (Tr. 20). The ALJ's analysis was insufficient for several reasons.

First, if Dr. Helton's opinions lacked sufficient explanation, *e. g.*, as to the nature of the claimant's medically determinable impairment that could cause such limitations, or support from clinical findings or treatment records, the ALJ should have recontacted Dr. Helton for clarification of his opinions before rejecting them outright. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, the effect of those limitations on her ability to work, . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See also Ragan v. Barnhart*, 89 Fed. Appx. 160, 163 (10th Cir. Feb. 11, 2004) ("While lack of support is a legitimate reason to deny controlling weight to a physician's opinion, the ALJ's finding of lack of supporting clinical findings triggered a duty to seek further development of the record before rejecting the opinion.") [unpublished opinion], *citing Watkins*, 350 F.3d at 1300.

Second, the ALJ *assumed* that Dr. Helton's medical source statement was "clearly based on the claimant's subjective complaints." This assumption was erroneous, particularly where there was nothing in the record to support it. *Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints[.] The ALJ had no legal nor evidentiary basis for [the finding]. Nothing in Dr. Hjortsvang's reports indicates he

relied only on claimant's subjective complaints[.] 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

Third, even if Dr. Helton's opinions were not entitled to controlling weight, the ALJ was required to determine the proper weight to give them by analyzing *all* of the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted] [emphasis added].[4] Those pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist

---

[4] The ALJ was required to perform this part of the analysis even if Dr. Helton was not a treating physician but only an examining physician. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, in order to reject the opinion of a treating physician such as Dr. Helton entirely, the ALJ was required to "give specific, legitimate reasons for doing so." *Id*. at 1301 [quotations omitted]. The ALJ thus failed to provide any of the detailed analysis required for the outright rejection of Dr. Helton's opinions on the medical source statement.

Further, the ALJ indicated that he agreed with the opinions of the state agency physicians that the claimant could perform sedentary work (Tr. 20). However, the ALJ failed to mention that the state agency physicians included a limitation for push and/or pull in the claimant's upper extremities, indicating the claimant was "unable to use [left] hand controls that require[d] a strong grip." (Tr. 196). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th

Cir. 1984).[5] The ALJ also failed to mention that the state agency physicians found the claimant could only occasionally climb, balance, stoop, kneel, crouch, or crawl (Tr. 198). This error, however, was harmless because the jobs the vocational expert testified the claimant could perform did not include these activities. *See* DICOT §§ 209.567.014 (order clerk), 731.685-014 (stuffer). *See also Hull v. Chater*, 1996 WL 528317, *slip op.* at *1 (10th Cir. Sept. 17, 1996) ("Because . . . restrictions [from climbing, stooping, kneeling, balancing, crouching, and crawling] would not further restrict claimant's ability to do the sedentary work identified by the vocational expert, the ALJ did not err in failing to include these limitations in his hypothetical questions.") [unpublished opinion]. Further, the ALJ wholly failed to explain why he preferred the opinions of state agency physicians *who did not examine the claimant* over the opinion of her own treating physician. *See, e. g., Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. § 404.1527(d)(1)&(2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. This was

---

[5] The ALJ asked the vocational expert if any work would be available if the claimant was unable to use his left hand, and the vocational expert indicated all jobs with the possible exception of surveillance systems monitor would be excluded (Tr. 264-65). The ALJ did not, however, include a limitation in the hypothetical questions to the vocational expert that the claimant was unable to use left hand controls requiring a strong grip. Thus, the Court will not speculate on what the vocational expert's testimony would be in response to such a hypothetical question.

particularly problematic because the agency physicians made their assessments prior to the preparation of the medical source statement by Dr. Helton and therefore could not have taken it into account.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of the opinions expressed by Dr. Helton on the medical source statement. On remand, the ALJ should: (i) recontact Dr. Helton, if possible, for any explanation the ALJ finds necessary; (ii) reconsider the assessment in accordance with the appropriate standards; and, (iii) determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 19th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**